# IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

RUSSELL TERRY MCELVAIN
Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR
TEXAS DEPT. OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIV.

Respondent - Appellee

CASE No. 18-10045
USDC No. 4:16-CV-259

U.S. COURT OF APPEALS
RECEIVED
APR 13 2018
FIFTH CIRCUIT

## BRIEF IN SUPPORT OF
## MOTION FOR CERTIFICATE OF APPEALABILITY (COA)

### REQUEST FOR ORAL ARGUMENT

Petitioner requests oral argument to be able to answer any questions and clarify any uncertainties that may develop as a result of the discussion herein. Person to person communications alleviates all misconceptions between the parties involved.

Russell McElvain, pro se
Petitioner - Appellant
TDCJ CID #1709041
Ellis Unit - TDCJ
1697 FM 980
Huntsville, TX 77343

## TABLE OF CONTENTS

Request for oral argument _____ cover

Table of contents _____ 1

Table of Authorities _____ 1-2

Jurisdictional Statement _____ 3

Statement of the Issues _____ 3-4

Statement of the Case _____ 4-6

Summary of the Argument _____ 6-9

Argument and Authorities _____ 10-22

    Ground Number 1 _____ 10-13

    Ground Number 2 _____ 13-16

    Ground Number 3 _____ 16-19

    Ground Number 4 _____ 19-20

    Ground Number 5 _____ 20-22

Conclusion _____ 23

Certificate of Compliance _____ 23

Certificate of Service _____ 24

## TABLE OF AUTHORITIES

Brady v. U.S. 742, 749-750, 90 S.Ct. 1463 (1970) _____ 11

Bram v. U.S. 532, 542-43, 18 S.Ct. 183 (1897) _____ 11

Courtemanche v. State, 507 S.W. 2d 545, 546 (Tex. Crim. App. 1974) ___ 22

Craeger, 952 S.W. 2d at 856 _____ 11

Dickerson v. US, 530 U.S. 428, 434, 120 S.Ct. 2326 (2000) _____ 11

Galveston County Municipal Utility District No. 3 v. The City of
    League City, Texas, 960 S.W. 2d 875, 877 (1997) _____ 12

Hutto v. Ross, 429 U.S. 28 at 30, 97 S.Ct. 202 (1976) _____ 11

Garrity v. State of New Jersey, 385 U.S. 493, 496, 87 S.Ct. 616 (1967) _ 11

Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774 (1964) _____ 11

Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986) ____ 12

Miller-EL v. Cockrell, 537 U.S. 332, 337, 123 S.Ct. 1029 _____ 13

Murray, 106 S.Ct at 2648 _____ 17

Osborne v. Ohio, 495 U.S. 103, 135-37 (1990) _____ 22

Pederson v. State, 237 S.W. 3d 882, 889-90 (Tex. Crim. App.-Texarkana 2007)___ 14-15

Pemberton v. Collins, 911 F.2d 1218 (5th Cir. 1993)_____ 11

Pittman v. City of Amarillo, 598 S.W. 2d 941, 945 (1980)_____ 12

Rankin v. State, 974 S.W. 2d 707, 712 (Tex. Crim. App. 1996)_____ 14

Roberts v. State, 29 S.W. 3d 596, 601-02 (Tex. App.-Houston 2000)_____ 15

Schneckloth v. Bustamonte, 412 U.S. 218, 225-26, 93 S.Ct. 2041 (1973)____ 11

Slack at 484, 102 S.Ct. 1595 _____ 13

U.S. v. Andujar-Basco, 488 F.3d 549, 561 (1st Cir. 2007) _____ 17

U.S. v. Childress, 58 F.3d 673, 715 _____ 18

U.S. v. Collins, 40 F.3d 95-98 (5th Cir. 1994) _____ 13

U.S. v. Delgado, 631 F.3d 685 (5th Cir. 2011) _____ 23

U.S. v. Desimone, 488 F.3d 561 (1st Cir. 2007) _____ 18

U.S. v. Johnson, 231 F.3d 43, 47 (D.C. Cir. 2000) _____ 18

U.S. v. Kopitak, 690 F.2d 1289, 1342 (11th Cir. 1982)_____ 18

U.S. v. Lopez, 437 F.3d 1059, 1064-65 (10th Cir. 2006) _____ 10

U.S. v. Maynard, 236 F.3d 601, 604-06 (10th Cir. 2000) _____ 18

U.S. v. Munoz, 150 F.3d 401, 418 (5th Cir. 1998) _____ 23

U.S. v. Plugh, 648 F.3d 118, 128 (2nd Cir. 2011) _____ 13

U.S. v. Wilson, 135 F.3d 291, 297-99 (4th Cir. 1998) _____ 18

U.S. v. Gonzales Vargas, 588 F.2d 631, 632-33 (1st Cir. 1977)_____ 18

U.S. v. Mandelbaum, 803 F.2d 42, 44 (1st Cir. 1986) _____ 18


28 U.S.C. sls 2253 _____ 3,13

28 U.S.C. sls 2254 _____ 3

Fed. R. App. P. 28.1 _____ 23

Fed. R. App. P. 33 _____ 23

## JURISDICTIONAL STATEMENT

1. Judgment was entered on April 7, 2011.
2. A timely appeal followed, decided on July 10, 2013
3. A state petition for writ of habeas corpus was timely filed and subsequently denied followed by a Federal petition for writ of habeas corpus pursuant to U.S.C. s/s 2254. (28 U.S.C.)
4. This Court's jurisdiction is founded upon 28 U.S.C. s/s 2253 in that the petitioner is appealing from a final judgment in a habeas corpus case.

## STATEMENT OF THE ISSUES

**GROUND NUMBER ONE:** The police interrogation was illegal constituting a Fifth Amendment violation against self incrimination and due process of law. A promise was made by the detective that the petitioner would not get any more charges if he confessed where he (detective) could find the evidence. Both detectives were guilty of illegal coercive tactics.

**GROUND NUMBER TWO:** Ineffective Assistance of Trial Counsel, a violation of the Sixth Amendment. (A.) Did not separate extraneous evidence which cannot be used to convict (photos from prior to statutes enactment) from evidence which can be used. (more photos, all one exhibit) (B.) Failed to investigate petitioner request which could have impeached the primary outcry witness.

**GROUND NUMBER THREE:** Denied a fair and impartial trial, due to prosecutor misconduct, a violation of petitioners Sixth and Fourteenth Amendment Rights. (A.) Falsely led the jurors to believe they'd have the option to choose a lesser charge. (B) Misled the jury as to how they could use photo evidence from before the enactment of the statute. (C.) Made improper statements designed to inflame and prejudice

(3)

the jury, including speaking her personal belief. (D) Deceived the judge about the interrogation and second search warrant.

GROUND NUMBER FOUR: Denied the right to a fair and impartial trial due to tainted evidence. Evidence is admitted whose origination is undocumented. It's missing from the search warrant return form.

GROUND NUMBER FIVE: Texas Penal Code 21.02 is unconstitutional. (A.) There are 8 existing statutes, each requiring proof of each element and jury unanimity, but under the "continuous" statute (21.02), those elements are meaningless as each statute has become the ways and means to committing the continuous crime. (B.) It is sexually discriminatory. (C.) The word lewd is overbroad, fluid, constantly evolving so cannot be defined.

## STATEMENT OF THE CASE

October 19, 2009, Kaitleigh (Kaity) McElvain, age 14, one of the adopted daughters of Russell McElvain made a claim to a school clerk by giving her a note on a notebook with these simple words, "my dad sexually molest [sic] me" written in it. RR 5 at 33; Trial Ex. 26. The school resource officer initiated a police response, RR 5 at 42, which led to Kaity being interviewed by Lindsey Dula of the Alliance For Children, RR 5 at 64-66. There, Kaity made more allegations against her father, Id.

Ms. Dula would later testify in McElvain's trial about what Kaity had told her including oral sex, Id. She would also testify of Kaity telling her about McElvain taking nude photos of her, RR 5 at 90-91. This testimony included an alleged ten year history of abuse starting at age 4. RR 5 at 64-65. Based on this discussion between Kaity and Ms. Dula being on 10/19/09, a ten year history starts the abuse

on or about 10/19/99. Penal Code 21.02, with which McElvain is charged was enacted on 9/1/07.

Based on Ms. Dula's original interview, Detective Jose Trevino, of the Haltom City Police Dept. obtained a search warrant for the McElvain home. Trial Exs. 41, 41A, 41B. The warrant was issued and the police were searching by 5:00 PM until 7:30 or 8:00 PM that night. RR 5 at 113, 115. The search of the residence led to the discovery of a variety of computer media, cameras, child pornography and a pink vibrator. Trial Ex. 41B. No pictures or video of Karty, the victim, were located. RR 6 at 26. An arrest warrant for McElvain was obtained and he was in custody being interviewed from around 8:30 PM until 10:00 PM that night. RR 5 at 122, 126.

As part of the interview, Det. Trevino promised McElvain that he wouldn't get into any more trouble or get any more charges if he would tell him where he could find the photos and video he took of Karty, because his charges already were aggravated sexual assault and possession of child pornography. RR 4 at 238, 257. This, however, would prove to be incorrect.

The next morning Det. Trevino interviewed McElvain again, and based on the promise of no more trouble, or new charges, McElvain gave Trevino the location of the well hidden photos. They were in the location they had searched the day before. Trial Ex 41B, RR 5 at 112, Trial Ex 41B, RR 5 at 130. Armed with these specifics Trevino sought another search warrant looking for the same items at the same location, RR 5 at 131, Trial Ex. 42, because the police were unable to find them without McElvain's direction/confession, RR 4 at 228, Trial Exs. 41, 41A, 42, 42A, RR 5 at 112. The photos of Karty and one video tape was now located, — the "smoking gun". RR 4 at 249, Trial Ex. 42B.

On 1/19/2011, a full 15 months after the promise of no new charges, McElvain's charges were increased to Continuous Sexual Abuse of a Child, under Texas Penal Code §§ 21.02, the instant case, CR at 2, Adm.R., Clerk's R. 2, ECF No. 12-1.

Trial was held in the Criminal District Court Two of Tarrant County Texas on April 6-7, 2011, cause # 1227000D. McElvain was convicted and given the maximum sentence of 99 years after a mere 28 minutes of jury deliberations, CR at 116, 123.

An appeal followed (# 08-11-00170-CR) and the judgment affirmed on July 10, 2013. A PDR was filed 10/4/13, refused 11/27/13, followed by a State petition for writ of habeas corpus under Code of Criminal Procedure, Article 11.07, on 2/17/15, followed by a Federal petition for writ of habeas corpus under 28 U.S.C. §§ 2254 on 4/4/16, denied 12/21/17.

## SUMMARY OF THE ARGUMENT

GROUND NUMBER ONE: The police interrogation was illegal constituting a Fifth Amendment violation against self incrimination and due process of law. Detective Trevino promised the petitioner he wouldn't get into any more trouble or get any more charges if he confessed where the evidence could be found. The police had searched the location once already and could not find it. 15 months later, on 1/19/11, new charges were brought upon the petitioner with higher penalties. Beyond that, Det. Trevino had used illegal tactics to overbear the petitioner's will and gain information by drawing family in, saying "tell us where they are [the pictures] for Kaity so no one will find them someday, embarrass her and ruin her life in the future." Det. Miller asked the petitioner if he thought someone deserves a second chance, going further into the

drawing of family in by saying "it's understandable [what you did], I know she's a cute girl." The "smoking gun" evidence was found after the petitioner told the detective exactly where to find it, in exactly the location they'd already searched, after these illegal tactics and promises were made.

The second problem with the interrogation was that the acknowledgement of rights form signed by the petitioner is actually a waiver of rights form. Before the prosecution may introduce a defendant's incriminating state‑ment, and the fruits thereof, it must prove that the accused voluntarily, knowingly, and intelligently waived the Miranda rights. This was the first time in McElvain's 55 years of life to be arrested. This was totally unfamiliar territory for him, so his "knowingly and intelligently" signing a form that is written in a misleading and confusing manner is up for debate. This is demonstrated when he asks the detectives "is this a time where I need an attorney present?"

GROUND NUMBER TWO: Ineffective Assistance of Trial Counsel, a violation of the Sixth Amendment. (A.) Did not separate extraneous evidence which cannot be used to convict (photos from prior to the statutes enactment) from evidence which can be used. Exhibits 27B and 27C are photos which were offered in open court. 58 of these photos were taken prior to September 1, 2007, the date of the statutes enactment. 4 of 6 video segments were taken prior to September 1, 2007. This issue was never pointed out in the presence of the jury. When the jury went to deliberations, they asked to view these photos and were given all of them with no direct means of knowing which were taken before the enactment of the statute. (B.) Failed to investigate petitioners request

which could have impeached the primary outcry witness, Ms. Lindsey Dula spoke; petitioner forcing the victim to perform oral sex on him. McElvain had told his attorney this was what the biological the victim had done before she came to him as a foster child. Porior ley refused to investigate this claim yet claims to have investigated of impeachment opportunity available prior to trial. During the trial, victim was asked by the prosecutor "Did he [defendant] ever have you put your mouth on his private areas?" Kaity's answer was "No Ma'am".

For a seasoned attorney of 29 years to choose not to impeach the outcry witness and not instruct the jury not to use much of the evidence to convict fell below the standard of quality expected.

GROUND NUMBER THREE: Denied a fair and impartial trial, due to Prosecutor misconduct, a violation of petitioner's Sixth and Fourteenth Amendment rights. (A.) Falsely led the jurors to believe they'd have the option to choose a lesser charge. She gave a detailed explanation of how, if she didn't prove the abuses more than 30 days apart, they could convict on "sexual performance", which is 5 to life, the lesser offense. (B.) Misled the jury as to how they could use photo evidence from before the enactment of the statute by saying "that's why you got to hear everything", strongly suggesting the jury can convict on the extraneous evidence from 2004, 3 years prior to the statute's enactment. (C.) Made improper statements designed to inflame and prejudice the jury, including her personal belief. "You're going to do your duty and find him guilty", "Find him guilty, he did it." The do your duty rhetoric can be used to convey the idea that their job is to convict, as opposed to being impartial. "When you do this to Kaity, when you

collect images of children, the nameless daughters..." By telling the jury that the victims of child pornography are our daughters and granddaughters the prosecutor crossed the line between demarcating permissible oratorical flourish from impermissible comment, only to inflame the passions and prejudices of the jury. "It didn't stop when the camera was put down." This was pure conjecture to inflame the jury more using the prosecutor's personal belief. (D.) Deceived the judge about the interrogation and second search warrant. She told the judge "there have been no additional charges brought, based upon the photos and video recovered in the second search warrant. The indictment in this case was filed 1/19/11, 15 months after the interrogation and is 100% based on those photos and video.

GROUND NUMBER FOUR: Denied the right to a fair and impartial trial due to tainted evidence. Evidence is admitted whose origination is undocumented. It's missing from the search warrant return forms. The form notes 1 video tape. The detective testifies of 1 tape found, yet there were 2 tapes admitted in evidence at the trial.

GROUND NUMBER FIVE: Texas Penal Code 21.02 is unconstitutional. (A.) There are 8 existing statutes, each requiring proof of each element and jury unanimity, but under the "continuous" statute (21.02) those elements to the crime are meaningless as each statute has become the ways and means to committ the continuous crime. Aggregating a statute can go too far by combining 8 existing statutes, violating a defendant's right to due process. (B.) It is sexually discriminatory in how it sexualizes the female breast from birth to death. It discriminates against the heterosexual male and homosexual female, and transexuals. What defines a female breast therein? (C.) The word "lewd" exhibition is overbroad and unenforceable due to each person's lewd is different.

## ARGUMENT AND AUTHORITIES

GROUND NUMBER ONE: The police interrogation was illegal constituting a Fifth Amendment violation against self-incrimination and due process of law. It would be a gross miscarriage of justice to accept the U.S. District Court's decision to bar this from habeas review. Jurists of reason could disagree with the decision of the District Court. The lies, deception, and trickery used by Det. Trevino and Det. Miller, and the tactics of the prosecuting Attorney to cover it up make this ground stand strong. The results of this coersion led the petitioner to tell the detective where he could find the evidence he was looking for, which would later be used as the most incriminating against him.

Det. Trevino promised McElvain he wouldn't get into any more trouble or get any more charges if he confessed where the evidence could be found, RR4 at 257. At this point, the charges against him were "possession of child porn" and "aggravated sexual assault," carrying a lesser punishment range than he currently has, and including parole eligibility. Det. Trevino said to tell us where the pictures are for Kaity, so no one will find them someday, embarrass her, and ruin her life in the future, RR4 at 243. Det. Miller asked the petitioner if he thought someone deserves a second chance (10/20/09 investigative narrative by Det. Trevino). Det. Miller is noted in the trial record as saying, "it's understandable [what you did], I know she's a cute girl", RR 5 at 127. These are all illegal coercive tactics to overbear McElvain's will and gain information by drawing family in and leading him to think he will get a second chance, trial Ex 23, 25. Confession involuntary because implied promise to defendant that prison sentence would be 50 year lighter if he confessed. U.S. v. Lopez, 437 F.3d 1059, 1064-65 (10th Cir. 2006). The test is whether the confession was extracted... or obtained by any direct or implied promises, however

slight. <u>Hutto v. Ross</u>, 429 U.S. 28 at 30, 97 S.Ct. 202 (1976). The existence of the bargain may have well entered into the respondents decision to give a statement, <u>Bram v. U.S.</u> 532, 542-43, 18 S.Ct. 183 (1897), <u>Brady v. U.S.</u> 742, 749-750, 90 S.Ct. 1463 (1970).

A confession is coerced if the defendants will was overborne by the circumstances surrounding the confession. <u>Dickerson v. U.S.</u>, 530 U.S. 428, 434, 120 S.Ct. 2326 (2000), <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26, 93 S.Ct. 2041 (1973), <u>Craeger</u>, 952 S.W. 2d at 856.

The Supreme Court has explained that an individual is coerced to give a confession by both "mental as well as physical" means. <u>Garrity v. State of New Jersey</u>, 385 U.S. 493, 496, 87 S.Ct. 616 (1967).

A defendant in a criminal case is deprived due process of law if his conviction is founded in whole or in part, upon an involuntary confession, without regard to the truth or falsity of the confession, and even if there is ample evidence from the confession to support the conviction. <u>Jackson v. Denno</u>, 378 U.S. 368, 376, 84 S.Ct. 1774 (1964).

"Independent factual review is required any time confession is involved in securing conviction which is challenged by habeas corpus petition; State court conclusions do not limit that review." <u>Pemberton v. Collins</u>, 911 F.2d 1218, (5th Cir. 1993).

When the prosecuting attorney questioned Det. Treuno, he did admit to these promises. However the prosecutor continues, "And in fact, when you filed the aggravated sexual assault of a child charge with the District Attorney's office, we actually upgraded it to continuous sexual abuse of a young child, did we not? You filed aggravated sexual assault and we changed the charge, is that right?" He replied yes, you did. RR4 at 258-259. Any jurist of reason could see the problem. (<u>I</u> didn't do it, <u>she</u> did). The question then becomes who can a U.S. citizen trust? One state agent can make promises,

(11)

another can renege at will, facing no consequences, leaving the citizen bewildered as to who to believe. Both are authorites of the State. "When discharging governmental function, municipality, as agent of State, is exercising State's police power, which is grant of authority from people to government for protection of health, safety, comfort and welfare of public." 960 S.W. 2d 875, 877, <u>Galveston County Municipal Utility District No. 3 v. The City of League City, Texas,</u> (1997), <u>Pittman v. City of Amarillo,</u> 598 S.W. 2d 941, 945 (1980).

The second problem with the interrogation, which jurists of reason could argue, is that the acknowledgement of rights form signed by McElvain at the interrogation is actually a waiver of rights form. The common term for this is the Miranda rights. While the top of the form did contain a correct recitation of rights, it contains only a waiver of those rights, Trial Ex. 22. Nowhere on the form is there a place merely to acknowledge those rights, much less assert them. The signature blank on the form is for the "person warned" even though the execution of the form leads to a waiver of the rights, not an acknowledgement of them.

Before the prosecution may introduce a defendant's incriminating statement, and the fruits thereof, the evidence located, it generally must prove that the accused voluntarily, knowingly, and intelligently waived the Miranda rights. This was the first time in the petitioner's 55 years of life he had been arrested, jailed, interrogated. Needless to say, this was totally unfamiliar territory for him, so his "knowingly and intelligently" knowing what he was signing is open for dispute, especially since the form itself is written incorrectly and in a confusing manner. The petitioner was misled about what he was signing, not understanding he'd just waived his rights. "The waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine,</u> 475 U.S. 412, 421, 106 S.Ct. 1135 (1986).

See U.S. v. Collins, 40 F.3d 95, 98 (5th Cir. 1994), "waiver valid in part because defendant familiar with criminal justice system as a result of his extensive criminal history". In the instant case, the opposite applies. See U.S. v. Plugh, 648 F.3d 118, 128 (2nd Cir. 2011), "waiver valid in part because defendant was familiar with Miranda rights due to his experience as state corrections officer." Again, McElvain was not; the opposite applies.

This lack of knowingly and intelligently knowing what the petitioner was doing becomes clear when during the interrogation he asks, "is this a time where I need an attorney present?" RR 4 at 241.

When the denial of relief is based on procedural grounds, then petitioner must show that "jurists of reason would find it debatable whether the district court was correct in it's procedural ruling." Slack, at 484, 120 S.Ct. 1595. It is clear that petitioner need not show that appeal will succeed in order to obtain a COA. Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S.Ct. 1029.

This ground alone meets the standard of 28 U.S.C. sls 2253 (c)(2) and should result in the approval of the C.O.A.

GROUND NUMBER TWO: Ineffective Assistance of Trial Counsel, violation of the Sixth Amendment.

(A.) Did not separate extraneous evidence, which cannot be used to convict, from the evidence which can be used. Did not inform the jury how they were to use the extraneous evidence, nor how to know one from the other.

States Ex. 27B is photos on self printing paper; Exhibit 27C is Polaroid photos. They were offered in and for the pre-trial hearing only, RR4 at 253-254, and it is noted then some were taken prior to 9/1/07, the date of the enactment of the statute for the instant case, RR4 at 264, but this was not in the presence of the jury.

They were offered and admitted in open court in RR5 at 139 and 141. There is no mention of the fact many were taken prior to the enactment

of the penal code at this point, in the jury's presence. At RR5 at 144, the prosecutor is questioning Det. Trevino, showing him one of the photos from the group and he says, "It says 12 and a yo, I'm guessing years old." This highly trained detective is "guessing" what the writing means, yet the Court expects the jury of amatuers/peers to just know what it means. By sending all of the photographs into the jury room during deliberations, CR 118, no one knows how the many pre-September 1, 2007 photos were used. We can safely surmise all of the photos were used to convict the petitioner for a crime that did not exist prior to Sept. 1, 2007.

States Ex. 44A is the videotape evidence admitted in RR5 at 149 with no mention of most of it being pre-Sept. 1, 2007. State's Ex. 45 is a DVD duplicate of the tape and admitted in RR5 at 153, with no mention of the pre-statute dates. When the forensic analyst was testifying he stated the earliest date of the tape was 10/7/05. The jury was never told what they could and could not consider for a conviction under this 9/1/07 penal code.

Telling the jury only in the jury instructions at the end of the trial not to consider any acts before 9/1/07, CR at 108, is useless when they were not told the dates of the photos and video, nor how to decipher them. The jury is not trained on forensics.

We will never know how the jurors used all of the evidence, thus the possibility exists that, unless we instruct the jury on evidence concurrently with it's admittance, jurors may, unbeknownst to us, use that evidence improperly by forming an indelible perception of the defendant that will work unfairly to his inevitable detriment. Rankin v. State, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996), Pederson v. State, 237 S.W.3d 882, 889-9 (Tex. App.-Texarkana 2007). We must therefore conclude th trial court's error injured Pederson's substantial rights. The

Texas Rules of Appellate Procedure mandate that we reverse the trial court's judgment of conviction and remand this case for a new trial." cf <u>Roberts v. State</u>, 29 s.w. 3d 596, 601-02 (Tex.App.- Houston 2000) (extraneous offense had 'substantial and injurious influence on jury verdict.) <u>Pederson</u> at 890.

It's difficult to comprehend how an attorney who had practiced law for 29 years could permit a jury to use evidence (photos and video), from before the enactment of the statute. This caused significant harm to McElvain and if not for this, there is a reasonable probability that the outcome of the proceeding would have been completely opposite. Counsel's deficient performance prejudiced the defendant, resulting in an unreliable and fundamentally unfair outcome. The Court's analysis of the facts and the prejudice that resulted is debatable among jurists of reason. Jurists of reason can disagree with the District Court's decision and agree with the petitioner's assertion that his trial attorney inadequately represented his interest.

<u>(B.)</u> Failed to investigate petitioner's claim that the oral sex the victim spoke to Ms Dula about was the victim's biological family before coming to the petitioner as a foster child.

When the outcry witness, Ms Dula, spoke of petitioner forcing the victim to perform oral sex on him, RR 5 at 65-66, and she further stated the victim described the taste, the ejaculation, RR 5 at 72-73, this prejudiced the jury from the onset. Prior to trial, at a county jail visit, the petitioner explained to his attorney that this was something that occurred in the victim's biological family before s/he even came to the petitioner as a foster child, and that this did not occur in his household.

In the attorney's response she says she 'investigated every potential defense and impeachment opportunity available prior to trial and it

was her choice to not investigate this one because the actions taken by the perpetrator were similar, (Adm. R., State Writ 180-198, ECF No. 12-20). In essence, the defense attorney did not believe the person she was defending, had already decided he was guilty, and opted to not investigate this aspect of the case.

During the trial, under questioning by the prosecuting attorney, Kaitleigh (the victim) is directly asked, "Did he [defendant] ever have you put your mouth on his private areas?" Kaitleigh's answer was "No ma'am", RR 5 at 91. To recap, the victim herself said this didn't happen, the defendant said this didn't happen, only the outcry witness said it did. Who's lying? The petitioner's attorney decided this wasn't worth investigating. Had she properly defended the petitioner, the outcome of this case could have been completely different. Ms Dulls entire testimony could have been impeached as a result. If a child's outcry witness is removed from the trial, a totally different outcome would have resulted.

Jurists of reason could easily find this debatable and agree with McElvain's assertion that his trial attorney inadequately represented his interest.

GROUND NUMBER THREE: Denied a fair and impartial trial due to Prosecutor Misconduct, a violation of his Sixth and Fourteenth Amendment rights.

Petitioner was prejudiced by the improper statements of the prosecuting attorney and it would be a miscarriage of justice for this to go without remedy. These four subgrounds, actions by the prosecutor, prejudiced the jury throughout the entire trial and worked to his complete disadvantage infecting every aspect of

the trial. See Murray, 106 S.Ct. at 2648.

(A) Falsely led the jurors to believe they would not have to decide guilty or not guilty of Continuous Sex Abuse of a Child because they could decide guilty of a lesser charge, RR4 at 47-49, 68-70. Quoting the prosecutor, "If the jury, however, finds the defendant guilty of sexual performance by a child, but we haven't proved it happened two or more times over 30 days apart, which — and that could be possible, the defendant is still guilty of sexual performance by a child because we didn't prove more than 30 days apart." RR4 at 47-48. "Sexual performance, which is where five to life comes in", is the lesser offence, RR4 at 67.

The prosecutor knew all this time there was no lesser charge offered. See pre-trial hearing, RR 3 at 28. Ms. Campbell (petitioners atty): "But if there's some lesser --", The Court: "Is there --." Ms. Minton (prosecutor): "There's no lesser." She had essentially needlessly wasted the Honorable Court's time as well as all present.

(B) Mis-stated law in her closing argument, misled the jury in referencing photos dating back as far as 2004 (before this statute was enacted) saying, "we don't try it where it begins on Sept. 1, 2007, that's why you got to hear every-thing", RR 6 at 13, strongly suggesting the jury can convict on the extra-neous evidence from 2004.

(C) Making statements designed to inflame the minds of the jurors. In the closing argument, "You're going to do your duty and find him guilty". 5 lines down, "But I caution you, do your duty, find him guilty. He did it." RR6 at 19. The "do your duty" rhetoric can be used to convey the idea to the jury that their job is to convict. U.S. v. Andujar-Basco, 488 F.3d 549, 561 (1st. Cir. 2007) (exhortation to do "your duty as jurors" improper.) In the last words to the jury, the prosecutor urged, "you find him guilty, your duty as jurors." The remarks were improper because they amounted

to affirmations of the prosecutor's personal belief that the defendant is guilty. U.S. v. Desimone, 488 F.3d 561 (1st Cir. 2007) (the government concedes the error was plain.)  See U.S. v. Gonzalez Vargas, 588 F.2d 631, 632-33 (1st Cir. 1977) (vacating a conviction where the prosecutor stated his personal belief in summation).  See U.S. v. Mandelbaum, 803 F.2d 42, 44 (1st Cir. 1986) (finding improper the suggestion that a jury has a "duty to decide one way or the other" because such an appeal "can only distract a jury from it's actual duty's impartiality.)

See RR 6 at 62, "When you do this to Kaity, when you collect images of children, the nameless daughters, nameless moms, you deserve a lengthy prison sentence."  By telling the jury that the victims of child pornography are "our daughters and granddaughters, neighbors, friends," the prosecutor here crossed the line between demarcating permissible oratorical flourish from impermissible comment. U.S. v. Kopituk, 690 F.2d 1289, 1342 (11th Cir. 1982).  A prosecutor may not make comments designed to inflame the passions or prejudices of the jury. U.S. v. Johnson, 231 F.3d 43, 47 (D.C. Cir. 2000);  See U.S. v. Childress, 58 F.3d 673, 715.

Additionally, on RR 6 at 19, the prosecutor states, "It didn't stop when the camera was put down. Find him guilty." RR 6 at 66, closing argument of punishment, "We know when the cameras turned off, he was just getting started. There was no supporting evidence of what happened when the camera was put down, or turned off. This was pure conjecture to inflame the jury more using the prosecutor's personal belief. U.S. v. Maynard, 236 F.3d 601, 604-06 (10th Cir. 2000); U.S. v. Wilson, 135 F.3d 291, 297-99 (4th Cir. 1998). Jurists of reason could easily reason, if he did take sexual performance of a child pictures and videos, of the victim alone, as accused, why would he turn the cameras off if more was going to happen, as the prosecutor is insinuating?

(D.) Lied to the judge about the fruits of the second search warrant and promises to defendant during interrogation when she states that, "there have been no additional charges brought based upon the child pornography recovered in search warrant #2," RR4 at 267. At the time of the promise of no more trouble (10/19/09) petitioner was charged with "possession of child pornography," RR4 at 267. The sole indictment of this case, filed 1/19/11, CR2, is entirely based on the photos recovered in the second warrant and carries a higher penalty, so yes there were more charges filed. Jurists of reason could agree that McElvain was denied a fair and impartial trial by any one of the aforementioned subgrounds, and all 4 should definitely meet the standards for a COA.

GROUND NUMBER FOUR: Denied the right to a fair and impartial trial due to tainted evidence. The State's response to this ground in the petitioner's Federal writ of Habeas Corpus was that this ground was procedurally barred from habeas review because it was raised for ~~proving~~ the first time in the Federal petition, but the U.S. District Court noted this was wrong noting, "Contrary to the respondent's assertion, a review of state court records reveals this ground was raised in the context of an ineffective assistance of counsel claim in his state habeas petition.

At issue is that the second warrant states that police seized one video-tape, but 2 were admitted at trial (search warrant return #14-09-SW-0022). In the questioning of Det. Trevino, by the prosecutor, he is asked about States Ex 44 and replies, "that is two HI-8 tapes, one black, one white", Further he's asked, "did you seize these out of the shed on 10/20?" His reply, "yes ma'am", RR5 at 147. Further, "States Ex 44A and 44B, what are those?" Reply, "Those are the Hi-8 120-min tapes that we found-- well, one's a 120 and the other one's a 60-min that we found during the second warrant, RR5 at 149. There is only 1 tape listed on the

search warrant return. Why are there 2 in court? Does the second tape even belong to the petitioner? The response by the petitioner's attorney simply states Ex. 44B did not contain any depictions of the complainant nor any pornographic material, but no explanation how that tape ended up there. Was it even his? The petitioner took hundreds of family videos, so the complainant (his daughter) would likely be in every one at some point. What is on the mystery tape may be of no issue, but a piece of evidence is entered into the trial proceeding, it's origination undocumented, unknown, unrecorded. It's ownership is even unknown. A jurist of reason could ask, if that tape got in the evidence at some point between 10/19/09 and 4/7/11 without anyone knowing how, did it happen in the Haltom City P.D., Tarrant County Courthouse, the DA's office? What else is in the evidence that doesn't belong there? What evidence may be missing? Anything that could have raised a shadow of doubt in the minds of the jury? If this Honorable Judge reading this brief gets a fly in his/her soup, does he/she request a new soup or just remove the fly because it really did no harm?

## GROUND NUMBER FIVE: Texas Penal Code 21.02 is Unconstitutional.

It would be a gross miscarriage of justice to accept the U.S. District Courts decision to bar from habeas review any of the claims that Penal Code 21.02 is unconstitutional under the U.S. Constitution. The Courts analysis of the facts are debatable among jurists of reason, hence they could disagree with the District Courts decisions.

(A.) Penal Code 21.02 Continuous Sexual Abuse of a Child is comprised of 8 separate existing statutes: Kidnapping 22.04, Indecency 21.11, Assault 22.011, Aggravated Assault 22.021, Burglary 30.02, Sexual Performance 43.25, Trafficking 20A.02, Compelling Prostitution 43.05. Eight of the jurors can disagree on what offense occured, yet still convict. Can a state legislature treat the specific acts of sexual abuse as a

manner and means for committing a single act of continuous sexual abuse? Can the legislature create a statute that changes another statute so under the new one it no longer requires a unanimous verdict, nor proof of each element of the offense? But, only under the auspices of the new statute (21.02) yet does not change the requirements of each statute standing alone (ie. 22.011, 22.021, 43.25 et al)? These existing 8 statutes alone require proof of each element of the individual crime and a unanimous jury verdict to convict the defendant of said crime. Yet our state, under penal code 21.02 says those elements are meaningless, and do not have to be proven, because under 21.02 those penal codes are now the ways and means of committing the "Continuous" crime.

The late Justice Scalia once wrote, "we would not permit an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday despite the 'moral equivalence' of the two acts."

These 8 penal codes are not similar in concept, nor morally equivalent. Sexual performance doesn't require touching the victim. Aggravated assault is much contact. Trafficking goes beyond state and country borders. Sexual Assault of a Child is a "result-oriented" offense. Indecency is a "nature of the conduct" offense.

Aggregating a statute can go too far, as this one does, and violates a defendant's right to due process. Upon conviction the defendant does not even know what the jury feels he's done, because each one has a menu of 8 to pick from.

(B.) Penal Code 21.02 is sexually discriminatory. Under 21.02 (6) is 43.25 (a)(2) reading in part, "Sexual conduct means sexual contact ... a lewd exhibition of ... a portion of the female breast below the top of the areola." The breast is not a sex organ. This code sexualizes the female breast from birth to death. An adult male or female may take as many photos as he or she wants of young boys shirtless, but no photos of a young girl shirtless, discriminating against the heterosexual male and homosexual female, not to mention transexuals. What defines a female breast therein?

Can a man take a photo of a topless 14-year-old, born female, but feels like a boy? Or the inverse, are the breasts of a nine year old boy, by birth, who feels like a girl suddenly sex organs? A homosexual male can take photos of shirtless boys and no one bats an eye, but this is his pleasure. A heterosexual male cannot take photos of his pleasure.

The sexual assault, 22.011 and aggravated sexual assault, 22.021 codes do not mention the breast. Touching it is not a part of these codes, yet overall they involve more contact than 43.25, yet all of these codes comprise the "continuous" code.

In addition, the statute's use of the words "lewd exhibition" makes it overbroad as lewd is an evolving, fluid word, that changes over time. Today's Victoria Secret TV ads would be lewd to a person in the 60's, and is lewd to some today. Todays swimwear is lewd to many, but not illegal. Two men kissing and making out is lewd even to the petitioner, yet it's on regular primetime TV. Today's lewd is tomorrows normal.

"Not surprisingly, States with long experience in applying indecency laws have learned that the word "lewd" is too indefinite and uncertain to be enforceable." Courtemanche v. State, 507 S.W. 2d 545, 546 (Tex. Crim. App. 1974); Osborne v. Ohio, 495 U.S. 103, 135-37 (1990).

The confusion of this ground is a demonstration of why this is debatable among jurists of reason, and thus meets the standard for approval of the COA.

## CONCLUSION

The cumulative error doctrine recognizes that "an aggregation of non-reversible errors" can result in a denial of the constitutional right to a fair trial, which calls for reversal. U.S. v. Delgado, 631 F.3d 685 (5th Cir. 2011), U.S. v. Munoz, 150 F.3d 401, 418 (5th Cir, 1998)

Wherefore, petitioner prays this Honorable Court to issue the writ of habeas corpus and to vacate his conviction and direct the State of Texas either to retry him within a reasonable time or release him.

Respectfully Submitted,

*Russell McElvain*

Russell McElvain, petitioner pro se

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 33(a)(7)(c), the petitioner certifies that this brief complies with the Fed. R. App. P. 28.1(3)(e)(2)(A)(i) in that it contains less than 14,000 words and further complies with this Court's Notice that the "Motion for COA" and "Brief in Support" must not exceed a total of 30 pages.

*Russell McElvain*

Russell McElvain, petitioner, pro se

## PRAYER

I close with a slightly unconventional "prayer"; two short scriptures I spoke to myself, the first as the jury was in deliberations, the second after the jury's verdict was pronounced. "He that is without sin among you, let him first cast a stone at her." (Jesus Christ in John 8:7 KJV)

"Father forgive them; for they know not what they do." (Jesus Christ in Luke 23:34 KJV)

*Russell McElvain*

Russell McElvain, petitioner pro se

## CERTIFICATE OF SERVICE

I, Russell McElvain, TDCJ CID#1709041, Petitioner-Appellant, being presently incarcerated at the O.B. Ellis Unit of the Texas Prison System, Walker County, Texas, do hereby certify that a true and correct copy of this Brief In Support of Motion for Certificate of Appealability (COA) was mailed to Jon R. Meador, Asst. Attorney General, P.O. Box 12548, Capitol Station, Austin, TX 78711-2548 on this the fifth day of April, 2018 with first class postage prepaid.

*Russell McElvain*

Russell McElvain, petitioner pro se

## INMATE DECLARATION

I, Russell McElvain, declare under penalty of perjury, that the above and foregoing is true and correct to the best of my knowledge and belief. Executed on this, the fifth day of April, 2018.

*Russell McElvain*

Petitioner-Appellant pro se
Russell McElvain
TDCJ CID #1709041
Ellis Unit - TDCJ
1697 FM 980
Huntsville, TX 77343

IN THE UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

Russell Terry McElvain
Petitioner - Appellant

v.

Lorie Davis, Director
Texas Dept. of Criminal Justice
Correctional Institutions Div.
Respondent, Appellee

Case No. 18-10045
USDC No. 4:16-CV-259

## MOTION FOR LEAVE TO USE THE ORIGINAL RECORD

TO THE HONORABLE JUDGE OF SAID COURT,

Comes Now, Russell Terry McElvain, Petitioner, proceeding in forma pauperis, moves this Honorable Court, pursuant to Fed. R. App. P. 24 (c), to allow his appeal to be heard on the original record without having to reproduce any part.

Respectfully Submitted,

Russell McElvain

Russell McElvain, Petitioner pro-se
TDCJ CID # 1709041
Ellis Unit - TDCJ
1697 FM 980
Huntsville, TX 77343

## PRAYER

WHEREFORE, PREMISES CONSIDERED, petitioner prays that this Honorable Court will grant this Motion For Leave To Use Original Record.

Russell McElvain

Russell McElvain, Petitioner pro-se

## CERTIFICATE OF SERVICE

I, Russell McElvain, TDCJ CID # 1709041, petitioner - appellant being presently incarcerated at the O.B. Ellis Unit of the Texas Prison System, Walker County, Texas, do hereby certify that a true and complete copy of this Motion For Leave To Use The Original Record was mailed to Jon R. Meador, Asst. Attorney General, P.O. Box 12548, Capitol Station, Austin, TX 78711-2548 on this, the fifth day of April, 2018 with first class postage prepaid.

Russell McElvain

Russell McElvain, Petitioner pro-se